**The Supreme Court of the State of Colorado**
2 East 14th Avenue • Denver, Colorado 80203

---

**2023 CO 21**

---

**Supreme Court Case No. 23SA18**
*Original Proceeding in Discipline*
Colorado Commission on Judicial Discipline Case No. 22-231

_____

**In the Matter of Complainant:**

The People of the State of Colorado,

and

**Respondent:**

Mark D. Thompson, a Former Judge of the
Summit County District Court.

_____

**Public Censure**
*en banc*
May 15, 2023

_____

**Appearing for the Colorado Commission on Judicial Discipline:**
Jeffrey M. Walsh, Special Counsel
*Denver, Colorado*

**Attorneys for Respondent:**
Recht Kornfeld PC
Abraham V. Hutt
*Denver, Colorado*

**PER CURIAM**

**CHIEF JUSTICE BOATRIGHT** and **JUSTICE SAMOUR** did not participate.

¶ 1    Former Judge Mark D. Thompson, you appear before this Court for imposition of discipline based upon violations of the duties of your office as a District Court Judge for the Fifth Judicial District. The Colorado Commission on Judicial Discipline ("the Commission") recommends approval of the Stipulation for Public Censure ("the Stipulation"), which you and the Commission executed on April 24, 2023, pursuant to Rule 37(e) of the Colorado Rules of Judicial Discipline ("RJD"). Consistent with the Stipulation, the Commission recommends that this Court issue a public censure. Before the entry of the Stipulation, you resigned your position as a judge. As part of the Stipulation, you also stipulated to the entry of a public censure.

¶ 2    The Court adopts these recommendations.

## I. Prior Disciplinary History

¶ 3    On August 29, 2022, this Court accepted former Judge Thompson's stipulation in case no. 22SA268 to a public censure and a thirty-day unpaid suspension from his judicial duties. These sanctions stemmed from former Judge Thompson's guilty plea to a reduced charge of disorderly conduct in Summit County District Court Case No. 21CR264. Former Judge Thompson's plea reflected his admission to having "recklessly" displayed an AR-15 style assault rifle during a dispute with his adult stepson. *In the Matter of Thompson*, 2022 CO 39, ¶ 2, 516 P.3d 28, 28–29.

2

¶ 4     Former Judge Thompson was suspended from his judicial duties from October 15, 2022, through November 13, 2022. *Id.* at ¶ 8, 516 P.3d at 31. In conjunction with this judicial disciplinary sanction, former Judge Thompson entered a separate stipulation with the Supreme Court's Office of Attorney Regulation Counsel, in which he received a six-month stayed suspension of his law license and one-year of probation, in which he was expected to provide updates regarding his progress in anger management treatment. Former Judge Thompson's one-year probationary term began on July 26, 2022. *See* Order Approving Stipulation to Discipline Under C.R.C.P. 242.19(c), *Matter of Thompson*, 22PDJ45.

## II. Stipulated Facts

¶ 5     In the April 24, 2023 Stipulation, you and the Commission agreed to the following facts:

1.     In the fall of 2022, [former] Judge Thompson was presiding over a personal injury case[1] that was set for trial at the end of November. In October, counsel for the parties jointly informed [former] Judge Thompson in writing that they had recently learned the defendant had died. Counsel indicated they were unsure how this would affect the proceedings and suggested that a stay and/or continuance of the trial might be necessary until a personal representative for the defendant's estate had been appointed.

---

[1] Summit County District Court Case No. 20CV30125.

2. On October 14, 2022, [former] Judge Thompson responded to the above by issuing an order that read as follows:

> The court orders counsel for the parties to confer and file an updated status report with the court not later than [fourteen] days from the date of this order. A suggestion of death should be filed. Additionally, the case may only proceed against the estate. The court does not continue trial at this time and will await further information from the parties.

3. On October 27, 2022, the defendant's counsel filed the suggestion of death. The parties did not file an updated status report as directed. The parties did not file all of the previously ordered pretrial filings due on November 1, 2022. Plaintiff's counsel filed a proposed Joint Trial Management Order on November 9, 2022, but the parties took no action to substitute the estate of the deceased defendant as required.

4. On November 15, 2022 (i.e.[,] two days after [former] Judge Thompson returned from his unpaid suspension), he presided over a pre-trial readiness conference in the above case. When [former] Judge Thompson learned (a) that plaintiff's counsel didn't know how to substitute the defendant's estate for the defendant, and (b) that neither counsel had complied with an earlier pre-trial order to submit witness lists, . . . exhibit lists, proposed jury instructions, and a joint case management certificate, he lost his temper on the record. He berated counsel in a tone that was rude, condescending, and mocking.

5. During that hearing, [former] Judge Thompson expressed, among other things, the following:

   a. That the parties had waived their right to jury by failing to file timely pretrial jury instructions and

4

that he was imposing sanctions excluding evidence.

b.  That he was dismissing the case with prejudice because of the parties' failure to comply with his pre-trial orders.

c.  That he was inclined to pursue an indirect contempt citation against the attorneys and to request that the attorneys serve a week in jail as a sanction.

d.  That he was prohibiting the parties from making additional filings to mitigate the evidentiary sanctions imposed under the trial management order.

e.  That he was grieving both of the attorneys to the Colorado Supreme Court's Office of Attorney Regulation Counsel.

f.  That, even though the jury trial was now vacated, he would not vacate the jury call, thus forcing up to 80 prospective jurors to come to court so that [former] Judge Thompson could humiliate the lawyers in front of the prospective jurors. Specifically, [former] Judge Thompson told both counsel that they would be required to tell the prospective jurors (a) their names, (b) that they were not prepared for trial because of a complete failure to follow court orders, and (c) how proud they were of themselves for wasting the jury's time by forcing the jurors to come to court for a trial that counsel were not ready for.

g.  [Former] Judge Thompson threatened counsel that if they did not appear to say these things to the prospective jurors, he would issue bench warrants for their arrest. He further threatened that if counsel did not say exactly what he told

5

them to say, he would immediately find them in direct contempt of court, remand them to jail, and that it would be a "heck of a long time before they saw the light of day."

6. On November 16, 2022, one day after the above referenced hearing and three days after returning to the bench from his suspension, [former] Judge Thompson did two things relevant to this proceeding.

a. First, he issued sua sponte a written order relieving counsel of their obligation to appear before a panel of jurors. [Former] Judge Thompson wrote that the public interest in avoiding the inconvenience to prospective jurors of summoning them to court for a trial that could not proceed outweighed the interest in holding counsel responsible for failure to comply with the court's pre-trial orders. But [former] Judge Thompson left all other evidentiary sanctions in place.

b. Second, [former] Judge Thompson held a telephone conference in a different case with different parties, which was a domestic relations case.[2] When a disagreement arose between the husband and wife related to the parenting plan, [former] Judge Thompson again acted with intemperance by insulting the parties. Specifically, he said, "The fact that these parties can't come up with a parenting plan reflects to me that neither of them are fit parents. And I have deep, deep concerns that we're just going to do this litigation dance for the next however many years, decades, it takes for these kids to get

[2] Lake County District Court Case No. 22DR30000.

out of high school and get as far away from these two parents as they possibly can, which is, God-willing, what they'll be able to do."

7. Two days later, on November 18, 2022, [former] Judge Thompson issued sua sponte a written order in the above referenced personal injury case stating that he would reconsider his sanctions if the parties promptly took action to substitute the estate and obtain service on the personal representative.

8. Two weeks later, on December 5, 2022, [former] Judge Thompson issued another order in the personal injury case.

   a. First, [former] Judge Thompson granted the parties' motions to reconsider and vacated his previously imposed sanctions because counsel had by then substituted the estate and obtained service on the personal representative. [Former] Judge Thompson subsequently reset the trial in April of 2023.

   b. Second, while acknowledging "disappointment" in his own "intemperance," [former] Judge Thompson denied plaintiff's motion to recuse himself from the case based on his treatment of counsel, as discussed above.

9. In lieu of the Commission seeking his temporary suspension according to Colo. RJD 34(a), [former] Judge Thompson resigned from office, effective January 13, 2023.

### III. Former Judge Thompson's Response

¶ 6      In the Stipulation, former Judge Thompson provided the following response:

1.  [Former] Judge Thompson takes full responsibility for his conduct by agreeing to this Stipulation. More specifically, [former] Judge Thompson apologizes for mismanaging his anger and failing to maintain the professional demeanor expected of a judge.

2.  [Former] Judge Thompson submits that counsels' noncompliance with court orders in the above referenced personal injury case, and their neglect of the case and of their clients, was significantly disrespectful to the court, the clients, the prospective jurors, and the court system. He submits that it would have been appropriate for him to be stern and scolding for their failure to abide by his orders and to suggest that they should face consequences personally for that disrespectful behavior which was harmful to the court, the clients, and the legal system. But he acknowledges that all of those things could and should have been done in a manner that was not disrespectful, rude, or mocking or in a way that required him very quickly to reverse his own rulings and orders. He submits that his anger was not the result of any animus or bias against the lawyers personally or their legal positions, but their failure to abide by appropriate trial management orders and the disrespect their neglect of the case demonstrated toward their clients and the judicial system.

3.  The Commission disagrees that these described circumstances in any way excuse [former] Judge Thompson's conduct.

4.  Given the above, [former] Judge Thompson acknowledges that he has not fully resolved concerns raised in his prior disciplinary proceedings that relate to his ability to manage anger and to maintain a respectful demeanor. Moreover, [former] Judge Thompson admits that his demeanor towards counsel in Case No. 20CV30125 was generally inappropriate and contrary to the requirements of the Colorado Code of Judicial Conduct, as detailed below.

8

## IV. Stipulated Code Violations

¶ 7    The parties further stipulate as follows:

**Colorado Code of Judicial Conduct Canon Rule 1.1**

1. Canon Rule 1.1(A) provides, in relevant part: "A judge shall comply with the law, including the Code of Judicial Conduct."

2. As described below, [former] Judge Thompson acknowledges his non-compliance with Canon Rules 1.2, 2.8, and 2.11, which establishes that he violated Canon Rule 1.1.

**Colorado Code of Judicial Conduct Canon Rule 1.2**

3. Canon Rule 1.2 provides: "A judge shall act at all times in a manner that promotes public confidence in the independence, integrity, and impartiality of the judiciary, and shall avoid impropriety and the appearance of impropriety."

4. Comment 5 to Rule 1.2 states in relevant part, "The test for appearance of impropriety is whether the conduct would create in reasonable minds a perception that the judge violated this Code or engaged in other conduct that reflects adversely on the judge's honesty, impartiality, *temperament*, or fitness to serve as a judge" (emphasis added).

5. [Former] Judge Thompson acknowledges that his problems with temperament created an appearance of impropriety in violation of Canon Rule 1.2.

**Colorado Code of Judicial Conduct Canon Rule 2.8**

6. Canon Rule 2.8(B) provides, in relevant part: "A judge shall be patient, dignified, and courteous to litigants, jurors, witnesses, lawyers, court staff, court officials, and

9

others with whom the judge deals in an official capacity . . . ."

7. [Former] Judge Thompson acknowledges that his words and conduct violated Canon Rule 2.8.

**Colorado Code of Judicial Conduct Canon Rule 2.11**

8. Canon Rule 2.11(A)(1) provides, in relevant part: "A judge shall disqualify himself or herself in any proceeding in which the judge's impartiality might reasonably be questioned, including but not limited to the following circumstances: The judge has a personal bias or prejudice concerning a party or a party's lawyer . . . ."

9. [Former] Judge Thompson admits that his conduct created the appearance of personal animus against counsel in the personal injury case thereby constituting a violation of Canon Rule 2.11(A)(1).

## V. Stipulated Resolution of Formal Proceedings

¶ 8 RJD 37(e), titled "Stipulated Resolution of Formal Proceedings," allows the Commission to file a "stipulated resolution" as a recommendation to this Court in a disciplinary proceeding. In filing such a stipulation, the Commission has authority to recommend, among other possible sanctions, that this Court "censure the Judge publicly . . . by written order." RJD 36(e); *accord* Colo. Const. art. VI, § 23(3)(f). Under RJD 40, after considering the evidence and the law, this Court is required to issue a decision concerning the Commission's recommendations. If the Commission recommends adoption of a stipulated resolution, "the Court shall order it to become effective and issue any sanction provided in the stipulated

10

resolution, unless the Court determines that its terms do not comply with Rule 37(e) or are not supported by the record of proceedings." RJD 40.

¶ 9 By the Stipulation, former Judge Thompson waives his rights to a hearing in formal proceedings and review by this Court as provided according to RJD 37(e) and RJD 40. Given former Judge Thompson's cooperation and agreement to the Stipulation, the parties agreed that the Commission shall not seek an assessment of costs and fees, as otherwise allowed according to RJD 36(g). This stipulated resolution, the sanctions imposed by this Court, and the record of proceedings shall become public on filing.

¶ 10 Upon consideration of the law, the evidence, the record of the proceedings, the Stipulation, and the Commission's recommendation, and being sufficiently advised in the premises, this Court concludes that the terms of the Stipulation comply with RJD 37(e) and are supported by the record of the proceedings. Therefore, this Court orders the Stipulation to become effective and issues the agreed-upon sanctions.

¶ 11 This Court hereby publicly censures you, former Judge Mark D. Thompson, for violating Code of Judicial Conduct Canon Rules 1.1, 1.2, 2.8, and 2.11.